## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MELBA A. TILMON,

      Plaintiff,

      v.                              Case No. 17-2383-JAR

RALPH LAUREN RETAIL, INC.,

      Defendant.


MELBA A. TILMON,

      Plaintiff,                       Case No. 17-2396-JAR

      v.

RALPH LAUREN RETAIL, INC.,

      Defendant.

## MEMORANDUM AND ORDER

Plaintiff Melba Tilmon, proceeding *pro se*, filed these actions alleging discrimination and retaliation against her employer, Ralph Lauren Retail, Inc., under Title VII of the Civil Rights Act of 1964,[1] and the Age Discrimination in Employment Act of 1967 ("ADEA").[2]  The cases were consolidated on June 4, 2018, because Plaintiff's claims stemmed from a common nucleus of operative facts.[3]  The consolidated action is before the Court on Defendant's Motion for Summary Judgment (Doc. 56).  The motion is fully briefed, and the Court is prepared to rule.  As explained more fully below, the Court grants Defendant's motion for summary judgment.

---

[1] 42 U.S.C. §§ 2000e–2000e-17.

[2] 29 U.S.C. §§ 621–634.

[3] Doc. 32.

## I. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[4]  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[5]  "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the nonmoving party, is such that a reasonable jury could return a verdict for the nonmoving party."[6]  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[7]  An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."[8]

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[9]  In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[10]

---

[4]Fed. R. Civ. P. 56(a); *see also Grynberg v. Total*, 538 F.3d 1336, 1346 (10th Cir. 2008).

[5]*City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[6]*Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[7]*Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[8]*Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[9]*Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[10]*Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671); *see also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[11] The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[12] Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[13] To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[14] Rule 56(c)(4) provides that opposing affidavits must be made on personal knowledge and shall set forth such facts as would be admissible in evidence.[15] The non-moving party cannot avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation.[16]

Where the defendant seeks summary judgment on an affirmative defense:

> The defendant . . . must demonstrate that no disputed material fact exists regarding the affirmative defense asserted. If the defendant meets this initial burden, the plaintiff must then demonstrate with specificity the existence of a disputed material fact. If the plaintiff fails to make such a showing, the affirmative defense bars his claim, and the defendant is then entitled to summary judgment as a matter of law.[17]

---

[11]*Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324; *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[12]*Anderson*, 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

[13]*Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671); *see Kannady*, 590 F.3d at 1169.

[14]*Adams*, 233 F.3d at 1246.

[15]Fed. R. Civ. P. 56(c)(4).

[16]*Id.*; *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (citation omitted).

[17]*Johnson v. Riddle*, 443 F.3d 723, 724 n.1 (10th Cir. 2006) (quoting *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997)) (citations omitted).

Finally, summary judgment is not a "disfavored procedural shortcut;" on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[18]  In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[19]

Because Plaintiff is a *pro se* litigant, the court must construe her pleadings liberally and apply a less stringent standard than that which is applicable to attorneys.[20]  However, the court may not provide additional factual allegations "to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[21]  The court need only accept as true the plaintiff's "well-pleaded factual contentions, not h[er] conclusory allegations."[22]  Additionally, a *pro se* litigant is not excused from complying with the rules of the court and is subject to the consequences of noncompliance.[23]

## II.    Uncontroverted Facts

Most of the material facts in this matter are stipulated in the Pretrial Order.  To the extent the following facts are not stipulated, they are either uncontroverted or viewed in the light most favorable to Plaintiff as the nonmoving party.

---

[18]*Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[19]*Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir. 1988).

[20]*Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997).

[21]*Id.*

[22]*Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citation omitted).

[23]*Ogden v. San Juan Cty.*, 32 F.3d 452, 455 (10th Cir. 1994) (citing *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (insisting that *pro se* litigants follow procedural rules and citing various cases dismissing *pro se* cases for failure to comply with the rules)).  Defendant properly filed and served on Plaintiff a Notice to Pro Se Litigant Who Opposes a Motion for Summary Judgment (Doc. 58) at the time it filed its motion for summary judgment, apprising Plaintiff of the governing federal and local rules.

Defendant Ralph Lauren Retail, Inc. ("Ralph Lauren") opened a Kansas City, Kansas retail factory store in 2011. On September 11, 2011, Defendant hired Plaintiff Melba Tilmon as a Store Supervisor; she was one of the original employees of that store. Plaintiff is an African American female, born in 1960. Prior to joining Ralph Lauren, she had more than twenty years' experience working in retail. Plaintiff received an overall "Achieves Expectations" performance rating in April 2013. In April 2014, Plaintiff again received an overall "Achieves Expectations" performance rating, but a "Below Expectations" rating in "Building Relationships." Jill Jones completed this performance evaluation of Plaintiff. Plaintiff does not claim that Jones discriminated against her.

### Assistant Manager Opportunities

Plaintiff applied to be an Assistant Manager at Defendant's Kansas City, Kansas store twice between June and November 2014. Plaintiff first applied on June 1, 2014. She interviewed on June 17, 2014 with then-General Manager Janet Haller. Plaintiff was not hired for the position. Ms. Haller instead hired Rebecca Perkins—a Caucasian woman under the age of forty. Ms. Perkins was qualified for the position and had prior experience as an Assistant Manager that Plaintiff did not have.

Plaintiff next applied for an Assistant Manager position on August 10, 2014. This time, however, Plaintiff did not interview for the position. Ms. Haller hired Kimberly Harland—an African American woman over the age of forty. On August 22, after learning she was not granted an interview, Plaintiff sent an email to District Manager Winston Mays and Senior Director of Human Resources Patricia Moffett, alleging "unfair differential treatment in a hostile work environment."[24] She complained that her "desire to advance within the Company has been

---

[24]Doc. 62-2 at 2.

met with negativity each time I have applied internally for an open position," and that she is the "victim of . . . bias and discrimination."[25]

One month later, on October 14, Plaintiff called Defendant's Fair Employment Practice ("FEP") hotline to complain about Ms. Haller's management style and failure to promote her. Plaintiff also submitted a written complaint. The Senior Director of the FEP Department, Ty Ragland, investigated Plaintiff's complaints about Ms. Haller—complaints that were similar to complaints Plaintiff had made about Ms. Haller's predecessor, Brian Weiss. Plaintiff claimed that Mr. Weiss: (a) treated her differently, (b) never talked to her, (c) demonstrated inappropriate behavior in bringing up her prior lawsuits, (d) discouraged her from applying for Assistant Manager positions, and (e) had not spent time with her or spoke with her as he did with others. Plaintiff does not allege, however, that Mr. Weiss discriminated against her based on any protected status. Mr. Ragland sent Plaintiff the results of the FEP investigation on November 19, 2014, and informed her that his office was "unable to substantiate [the] allegations of unlawful discrimination and inappropriate management behavior."[26]

Another Assistant Manager position opened in November 2014. Due to the quickly approaching holidays, Defendant did not post or interview for this position. Ms. Haller instead hired the "runner-up" for the August Assistant Manager position—April Shea, a Caucasian woman who was under forty years old. Plaintiff was not interested in this position because it was for an Assistant Manager of Human Resources, whereas Plaintiff wanted to be an Assistant Manager of Merchandising.

---

[25]*Id.*

[26]Doc. 57-13 at 2.

*Performance Issues*

Ms. Haller described Ms. Tilmon as "unresponsive to coaching and dismissive of anything she has to say,"[27] and her performance as "below average because she does not execute efficiently, communicate well with others, or take feedback/coaching without getting defensive."[28]  Plaintiff's direct supervisor April Degraffenreid stated, "[c]ommunication is the biggest challenge that Ms. Tilmon faces" and that

> Ms. Tilmon comes to work and does not communicate with the store management team, rather she will come in and just to a particular spot in the store and begin working in that area.  When managers try to communicat[e] with her there is a lot of resistance or she will just blatantly ignore.  She will keep herself busy completing tasks that need to be completed, but will not check in to see what the agenda for the day may be.[29]

On February 5, 2015, Defendant placed Plaintiff on a Performance Improvement Plan ("PIP"), which was signed by Ms. Haller, Ms. Degraffenreid, and Plaintiff.  The PIP required Plaintiff to improve in three areas: (1) nurturing customer relationship and partnerships; (2) fostering open communications with others in the company; and (3) building relationships.  Among the problems listed under item 2 are: "Melba has a difficult time taking direction from the leadership team and being redirected in her focus," and "Melba struggles with change and isn't open to feedback to improve her performance."[30]  Plaintiff disagreed with the substance of the PIP and sent Ms. Haller a letter rebutting the alleged performance issues.  She explicitly refused to make any adjustments to her behavior and how she handled her supervisor role, especially as to Ms. Haller.

---

[27]Doc. 54 at 4 ¶ 32.

[28]*Id.* ¶ 33.

[29]*Id.* ¶ 34.

[30]Doc. 57-8 at 2.

On March 9, 2015, Plaintiff received a follow-up Written Performance Discussion from Ms. Degraffenreid, indicating that Plaintiff's performance had not adequately improved since the PIP was issued. Plaintiff again disagreed with the substance of the document, and again sent Ms. Haller a letter rebutting the alleged performance issues.

On April 9, 2015, Defendant's Kansas City store received an email from the manager of Sales Audit/Finance, stating there had been a shortage error on March 28. Ms. Haller responded to the email that Plaintiff did not follow procedure. It was Ms. Haller's task to investigate the shortage, and as part of the investigation Ms. Haller spoke with Plaintiff and Ms. Perkins, because they were the two members of management who closed the store on March 28. In April 2015, Ms. Tilmon received an overall rating of "Below Expectations" on her annual appraisal. Plaintiff indicated below her signature that she did not agree with the assessment.

On April 10, 2015, Plaintiff received a Final Written Warning on her PIP. This document again indicated that Plaintiff had not made adequate progress since the PIP's issuance, and that the next step would be termination. Again, Plaintiff disagreed with the substance of the document, and again she sent Ms. Haller a letter rebutting the alleged performance issues.

On June 15, 2015, Ms. Haller took a picture with the store iPad of merchandise Plaintiff had brought out. Ms. Haller captioned the photo "Leftover product" and sent it to her personal email. Ms. Haller often took pictures with the store iPad to help coach employees, including both Caucasian and minority employees. As the General Manager of Defendant's Kansas City store, Ms. Haller was responsible for the overall operations of the store, including ensuring that all employees were doing their jobs and complying with Defendant's policies.

On July 7, 2015, the Regional Manager, the Senior Director of Human Resources, and the District Manager all visited the store to conduct interviews with the staff about the atmosphere of

the store.  Plaintiff was called to the office and questioned about a May 20, 2015 shoplifting incident.  On that day, two suspected shoplifters left Defendant's Kansas City store.  Defendant's Suspected Shoplifter Response Policy states: "NEVER leave the building to follow a suspected shoplifter; do NOT chase or attempt to run after a suspected shoplifter; stay in the building."[31] Despite this policy, Plaintiff exited the store after two suspected shoplifters had left.  Plaintiff, however, stated that she was not following the shoplifters, but instead going to retrieve the merchandise.

The Senior Director of Human Resources told Plaintiff that leaving the building during a shoplifting incident was against company policy.  Plaintiff explained that she had not pursued the shoplifters but had simply "reacted to a customer stating that the merchandise was dropped outside the store."[32]  Plaintiff was asked to write a statement regarding the incident.  On July 30, Plaintiff was called back to the office.  There, the Senior Director of Human Resources informed her that the company had concluded that she had indeed violated company policy by stepping outside the store.  The Senior Director also informed Plaintiff that if it happened again it would be grounds for termination.

On July 31, 2015, Ms. Haller called Plaintiff to the office and questioned her about a July 11 employee transaction.  During Plaintiff's shift that day, an employee had worn a shirt before purchasing it.  Employees are required to pay for items before using them, including before wearing any clothing.  Plaintiff explained that she knew the employee had not purchased the shirt before putting it on, but that she took the tag from the item and placed it on her register.  Because a line of customers had formed, Plaintiff first checked out the customers and then proceeded to

_____

[31]Doc. 54 at 5.

[32]Doc. 57-2 at 3.

9

sell the employee the shirt. Plaintiff then told Ms. Haller that she was upset about the monitoring of her actions, and that she believed her persecution was unacceptable and would no longer be tolerated. Plaintiff also told Ms. Haller that if the Defendant continued to ignore Ms. Haller's behavior and differential treatment of Plaintiff, then she would take her concerns outside of the company.

Plaintiff understood that failing to complete the PIP successfully would result in the termination of her employment. Nonetheless, despite the written warning in April 2015, Defendant did not terminate Plaintiff once the PIP was "complete." Plaintiff continues to work for Ralph Lauren at the Kansas City, Kansas store.

### Scheduling

On April 11, 2015, Plaintiff requested to take four hours of Family and Medical Leave Act ("FMLA") leave. Plaintiff followed proper procedure but was not paid for those hours until inquiring about it to corporate payroll and Ms. Haller. Ms. Haller said the failure to pay for the time was an oversight and that she would correct the error. The missing pay indeed came in the next pay period.

Ms. Tilmon's schedule reflects regular days off.

### Administrative Charges

Plaintiff filed three administrative charges with the Kansas Human Rights Commission against Defendant on April 3, 2015, February 3, 2016, and June 27, 2016. She has received right to sue letters on the charges contained therein.

## III.    Discussion

Plaintiff asserts discrimination and retaliation claims under Title VII and the ADEA.[33]  In the Pretrial Order, Plaintiff alleges three discrete acts of discrimination based on race and age: (1) failure to promote; (2) placement on the PIP; and (3) unsatisfactory ratings.  Plaintiff alleges retaliation "for filing a Charge of Discrimination" . . . including "non equity in scheduling, work ethics and tasks were inconsistently scrutinized," and "lack of communication or refusal to resolve concerns."[34]  The Court first considers Defendant's affirmative defense that Plaintiff failed to exhaust administrative remedies on all failure-to-promote claims, except for the Assistant Manager position in November 2014.  The Court next considers the merits of Plaintiff's exhausted claims.

### A.    Administrative Exhaustion

Title VII and the ADEA both require exhaustion of administrative remedies.[35]  Failure to exhaust administrative remedies is an affirmative defense.[36]  To exhaust administrative remedies, a plaintiff must file an administrative charge with either the EEOC or an authorized state agency and receive a right-to-sue letter based on that charge.[37]  The Court must liberally construe the administrative charge to determine whether a particular claim has been exhausted.[38]  The inquiry "is limited to the scope of the administrative investigation that can reasonably be expected to

---

[33]Doc. 54 at 10.

[34]*Id.* at 9.

[35]42 U.S.C. § 2000e-5; *Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1191, 1194 n.1 (10th Cir. 2004) (noting administrative exhaustion requirement is the same for ADEA cases as Title VII cases).

[36]*See Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1185 (10th Cir. 2018).

[37]*See* 42 U.S.C. § 2000e(5)(e)(1); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002).

[38]*Smith v. Cheyenne Ret. Invs. L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018); *Jones v. UPS*, 502 F.3d 1176, 1186 (10th Cir. 2007).

follow from the discriminatory *acts* alleged in the administrative charge."[39]  Potential claims are limited in that "each discrete incident of [discriminatory or retaliatory treatment] constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted."[40]

Defendant argues that Plaintiff failed to exhaust her failure-to-promote claim except with respect to the November 2014 position discussed in her first charge.  Plaintiff's April 3, 2015 Charge alleges discrimination between May 22, 2014 to March 9, 2015.  The only reference to a promotion in that charge states: "On November 17, 2014, I was denied the opportunity to apply for an Assistant Manager position."[41]  Neither the second nor the third charge contain allegations related to promotions.  The Court finds that Defendant has met its burden of demonstrating as a matter of law that Plaintiff failed to administratively exhaust all non-promotion claims except for the Assistant Manager position that became available in November 2014.  Plaintiff does not address this issue in her response to summary judgment.  The Court therefore grants Defendant's motion for summary judgment on its affirmative defense that Plaintiff's failure-to-promote claims, except for the claim arising out of the November 2014 Assistant Manager position, were not administratively exhausted.

### B.    Merits of Exhausted Claims

Plaintiff's remaining discrimination and retaliation claims must be decided under the familiar *McDonnell Douglas Corp. v. Green*[42] burden-shifting framework because Plaintiff relies on circumstantial evidence.[43]  Under *McDonnell Douglas*, plaintiff initially bears the burden of

---

[39]*UPS*, 502 F.3d at 1186 (emphasis in original); *Jones v. Wichita State Univ.*, 528 F. Supp. 2d 1222, 1237 (D. Kan. 2007).

[40]*Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003) (citing *Morgan*, 536 U.S. at 110–13).

[41]Doc. 57-1 at 3.

[42]411 U.S. 792, 802–05 (1973).

[43]*See, e.g.*, *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011).

production to establish a prima facie case of discrimination or retaliation.[44]  The burden of

establishing the prima facie case is "not onerous."[45]  If plaintiff establishes a prima facie case,

the burden shifts to defendant to articulate a facially nondiscriminatory reason for its actions.[46]

If defendant articulates a legitimate, nondiscriminatory reason for its decision, the burden shifts

back to plaintiff to present evidence from which a jury might conclude that defendant's proffered

reason is pretextual, that is, "unworthy of belief."[47]  Typically, a plaintiff attempts to demonstrate

pretext in one or more of three ways:

> (1) "evidence that the defendant's stated reason for the adverse
> employment action was false"; (2) "evidence that the defendant
> acted contrary to a written . . . policy prescribing the action to be
> taken by the defendant under the circumstances"; or (3) "evidence
> that the defendant acted contrary to an unwritten policy or contrary
> to [the employer's] practice when making the adverse employment
> decision affecting the plaintiff."  Regardless of which methods the
> plaintiff uses, "[t]he relevant inquiry is not whether the employer's
> proffered reasons were wise, fair or correct, but whether it honestly
> believed those reasons and acted in good faith upon those
> beliefs."[48]

Despite the shifting framework, the ultimate burden of persuasion remains with the plaintiff.[49]

---

[44]*McDonnell Douglas Corp.*, 411 U.S. at 802.

[45]*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 238, 253 (1981).

[46]*Id.*; *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1113 (10th Cir. 2007).

[47]*Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1165 (10th Cir. 1998) (quoting *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995)).

[48]*Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 714 (10th Cir. 2014) (quoting *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000); *Rivera v. City & Cty. of Denver*, 365 F.3d 912, 925 (10th Cir. 2004)) (citations omitted).

[49]*Richardson v. Blue Cross/Blue Shield of Kan., Inc.*, 196 F. Supp. 2d 1174, 1181 (D. Kan. 2002).

### 1. Discrimination

#### a. Failure-to-Promote

As discussed above, Plaintiff only exhausted her failure-to-promote claim as to the November 2014 Assistant Manager position, therefore, the Court confines its analysis to that promotion. To establish a prima facie case of discrimination based on failure-to-promote, Plaintiff must demonstrate "(1) she was a member of a protected class; (2) she applied for and was qualified for the position; (3) despite being qualified she was rejected; and (4) after she was rejected, the position was filled."[50]

Defendant argues that Plaintiff neither applied for nor was rejected from the November 2014 position. Defendant did not post or interview for the position due to the quickly approaching holiday season, therefore, its hiring decision affected all employees equally. Moreover, Defendant points out that Plaintiff did not want the November position because it was in Human Resources, rather than Merchandising. Although the stipulated facts demonstrate that Plaintiff did not want to fill the November 2014 Assistant Manager position, she did apply for the previous Assistant Manager position, and it was from that pool of applicants that Ms. Haller made her hiring decision. Because the prima face stage of the *McDonnell-Douglas* framework is not onerous, the Court finds that Plaintiff has met her burden of production that she applied for and was rejected from this promotion opportunity. There is no dispute that she is a member of a protected class, and that the position was filled.

Defendant articulates a nondiscriminatory reason for not promoting Plaintiff in November 2014: it opted not to post or interview for the position, and instead hired the runner-up

---

[50]*Salemi v. Colo. Pub. Emps. Ret. Ass'n*, 747 F. App'x 675, 690 (10th Cir. 2018) (quoting *Jones v. Barnhart*, 349 F.3d 1260, 1266 (10th Cir. 2003)).

for the August 2014 position due to the holiday season quickly approaching. Therefore, the burden shifts to Plaintiff to show that this proffered reason for Defendant's decision was pretext for discrimination. Plaintiff argues that Defendant's reasons for not promoting her are varied and inconsistent. But Defendant only offers one explanation for failing to promote Plaintiff in November 2014—that it did not post the position or conduct separate interviews due to the impending holidays. Defendant's explanation as to this promotion decision is consistent throughout the record. Moreover, the decision to not post the job affected all employees, regardless of whether they did or did not belong to Plaintiff's protected classes. Finally, it is uncontroverted that Plaintiff was uninterested in this particular promotion. Therefore, Plaintiff has not created a genuine issue of fact that Defendant's explanation for not promoting her in November 2014 was pretext for race or age discrimination and summary judgment is granted in favor of Defendant on this claim.

### b. PIP and Unsatisfactory Ratings

Plaintiff may establish a prima facie case on her remaining discrimination claims by demonstrating (1) membership in protected class; (2) an adverse employment action; and (3) the adverse employment action occurred under circumstances giving rise to an inference of discrimination.[51]

The Court assumes for purposes of its summary judgment analysis that Plaintiff can establish a prima facie case of discrimination under both theories. Defendant offers a legitimate, nondiscriminatory reason for placing Plaintiff on a PIP in 2015—that she needed to improve in the three areas identified in the PIP: (1) nurturing customer relationship and partnerships; (2)

---

[51]*EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 800 & n.5 (10th Cir. 2007) (discussing how elements of prima facie case in discrimination cases vary depending on context).

fostering open communications with others in the company; and (3) building relationships. As to the "Below Expectations" rating for the 2015 fiscal year, Defendant asserts that this rating was the result of Plaintiff's communication problems during 2015, and her failure to adequately improve while on the PIP. Defendant asserts that Plaintiff's difficulty with communication persisted into 2015, and that the two decisionmakers responsible for enacting Plaintiff's PIP—Ms. Haller and Ms. Degraffenreid—believed that Plaintiff needed improvement in her communication with management.

Plaintiff argues that Defendant's proffered reasons for the PIP and negative appraisals are pretextual. First, Plaintiff asserts that the stated reasons for the negative performance documents are false because they followed a string of positive annual appraisals by Defendant. But Plaintiff received a rating of "Below Expectations" in the "Building Relationships" category for her 2014 appraisal—a rating that Plaintiff does not attribute to discriminatory motive. Moreover, the comments about Plaintiff's struggle to build relationships in the 2014 appraisal are consistent with the relationship building criticisms in the 2015 documents. Finally, even if the reviews were inconsistent, it would not demonstrate pretext because "successful past performance does not support the conclusion that subsequent negative evaluations are pretextual."[52]

Next, Plaintiff points to statements made by her prior supervisor and some of her coworkers that they never had difficulties communicating with Plaintiff.[53] Assuming these statements are admissible, they do not show that the decisionmakers responsible for the PIP and 2015 appraisal did not have an honest belief that Plaintiff struggled to communicate with management. Ms. Haller and Ms. Degraffenreid both stated that Plaintiff did not communicate

---

[52] *Drury v. BNSF Ry. Co.*, 657 F. App'x 785, 791 (10th Cir. 2016).

[53] The Court notes the stipulated fact that Plaintiff lodged similar complaints against her prior supervisor, Mr. Weiss, that she lodges in this case against Ms. Haller.

well with management, and that she resisted feedback and coaching. Plaintiff has offered no

evidence that suggests these statements were not honestly held by Ms. Haller and Ms.

Degraffenreid. In considering pretext, the Court must "examine the facts as they appear to the

person making the decision[,] not the plaintiff's subjective evaluation of the situation."[54]

Plaintiff has failed to demonstrate that either the PIP or the 2015 yearly appraisal were motivated

by anything other than a sincerely held belief that she was underachieving in her work.

Without any evidence that would allow an inference that Defendant's proffered reasons

for placing Plaintiff on a PIP and giving her a negative performance appraisal were pretextual,

these discrimination claims do not survive summary judgment.

### 2. Retaliation

#### a. Waiver

Plaintiff alleged in the Pretrial Order that Defendant retaliated against her *for filing a*

*charge of discrimination* by "non equity in scheduling, work ethics and tasks [that] were

inconsistently scrutinized," and "lack of communication or refusal to resolve concerns."[55] In the

response to summary judgment, Plaintiff claims that she was retaliated against *for sending her*

*August 22, 2014 email complaint* to Human Resources and the District Manager in the following

ways:

> (1) bullying, (2) false accusations of sales auditor errors, (3)
> monitoring transactions, (4) scrutiny of work photos, (5) shoplifter
> apprehension policy, (6) unfavorable job reviews, (7) adverse work
> scheduling, (8) papering her files, (9) no pay raise in four years,
> (10) a failure to promote, (11) negative appraisals, and (12) a
> performance improvement plan.[56]

---

[54]*Lobato v. N.M. Env't Dep't*, 733 F.3d 1283, 1289 (10th Cir. 2013) (quoting *Luster v. Vilsack*, 667 F.3d 1089, 1092 (10th Cir. 2011)).

[55]Doc. 54 at 9.

[56]Doc. 62 at 8–9.

Defendant argues that Plaintiff is bound by the claim as alleged in the Pretrial Order, and therefore may not expand her claim in response to summary judgment to include actions taken in response to her August 22, 2014 email. The Court agrees. The Pretrial Order "controls the course of the action unless the court modifies it."[57] "Claims, issues, defenses, or theories of damages not included in the pretrial order are waived."[58] It is true that the Pretrial Order should be "'liberally construed to cover any of the legal or factual theories that might be embraced by their language.' But the primary purpose of pretrial orders is to avoid surprise by requiring parties to 'fully and fairly disclose their views as to what the real issues of the trial will be.'"[59]

Plaintiff may not change her retaliation claim in her response to summary judgment, therefore, the Court considers the claim as it was alleged in the Pretrial Order: that Defendant retaliated against her for filing a charge of discrimination by imposing inequitable scheduling and work ethics, by inconsistently scrutinizing her work, and by failing to communicate with her to resolve concerns. Several of the following actions can be liberally construed as contained within Pretrial Order allegations: bullying, false accusations of sales auditor errors, monitoring transactions, scrutiny of work photos, shoplifter apprehension policy, adverse work scheduling, and papering her files. But Plaintiff waived the claims she asserts for the first time in her response to summary judgment that the retaliation was in response to her email, and that the following materially adverse actions were caused by her protected activity: unfavorable job reviews and appraisals, lack of a pay raise, failure to promote, and placement on the PIP.

---

[57]Fed. R. Civ. P. 16(d).

[58]*Zenith Petroleum Corp. v. Steerman*, 656 F. App'x 885, 887 (10th Cir. 2016) (quoting *Cortez v. Wal-Mart Stores, Inc.*, 460 F.3d 1268, 1276–77 (10th Cir. 2006)).

[59]*Id.* (quoting *Trujillo v. Uniroyal Corp.*, 608 F.2d 815, 818 (10th Cir. 1979), and *Cortez*, 460 F.3d at 1276).

### b. Prima Facie Case

Plaintiff may establish a prima facie case of retaliation on the claims she has not waived by demonstrating that "(1) . . . she engaged in protected opposition to discrimination, (2) a reasonable employee would have considered the challenged employment action materially adverse, and (3) a causal connection existed between the protected activity and the materially adverse action."[60]

Defendant does not contest that Plaintiff engaged in protected opposition to discrimination by filing her administrative charge. Instead, Defendant argues that Plaintiff did not suffer a materially adverse employment action. "To qualify as an adverse employment action . . . an 'employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination.'"[61] "Such actions are not simply limited to monetary losses in the form of wages or benefits. Instead, [courts] take a case-by-case approach, examining the unique factors relevant to the situation at hand."[62] "[W]hile the standard is sensitive to the particular circumstances of each case, it prescribes an objective inquiry that does not turn on a plaintiff's personal feelings about those circumstances."[63] "Each case is 'judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances.'"[64]

---

[60]*Payan v. UPS*, 905 F.3d 1162, 1172 (10th Cir. 2018) (quoting *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1202 (10th Cir. 2008)).

[61]*Id.* (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)).

[62]*Id.* (*Hillig v. Rumsfeld*, 381 F.3d 1028, 1031 (10th Cir. 2004)).

[63]*Turrentine v. UPS*, 645 F. Supp. 2d 976, 989 (D. Kan. 2009) (quoting *Semsroth v. City of Wichita*, 555 F.3d 1182, 1184 (10th Cir. 2009)).

[64]*Id.* (quoting *Semsroth*, 555 F.3d at 1184).

The employment actions Plaintiff identifies in the Pretrial Order are not materially adverse under this objective standard. Plaintiff alleges inequitable treatment but does not specify how the scrutiny over her work, "work ethics," or her hours compared with other similarly situated employees. Nor does Plaintiff explain when or about what issues Defendant failed to communicate with her. Without evidence describing the circumstances of the alleged adverse employment actions, it is impossible for the Court to determine whether they were materially adverse under the governing standards.

Plaintiff identifies more specific adverse employment actions in her response to summary judgment: false accusations of sales auditor errors, monitoring her transactions, scrutiny of work photos, applying the shoplifter apprehension policy, adverse work scheduling, and "papering her files." But Plaintiff does not submit evidence to create a genuine issue of material fact that these actions would dissuade a reasonable worker from making or supporting a charge of discrimination. The stipulated facts add important context to each of these complaints. As to the cash shortage issue, the parties stipulated that Ms. Haller addressed the issue with both Plaintiff and the other management employee present at the time of closing. As to Ms. Haller taking photos of Plaintiff's work, the parties stipulated that Ms. Haller used iPad photos to coach other employees too. Defendant followed its written shoplifting and employee purchase policies after Plaintiff violated them. And there was no evidence of disciplinary action taken, even though Plaintiff was subject to the PIP at the time she was counseled on these issues. The Court finds that under the circumstances of this case none of these actions were materially adverse.[65]

---

[65]*See Winston v. Ross*, 725 F. App'x 659, 666 (10th Cir. 2018) (finding Plaintiff did not show that additional scrutiny of work performance was materially adverse); *Keller v. Crown Cork & Seal USA, Inc.*, 491 F. App'x 908, 914 (10th Cir. 2012) (finding general complaints "about strict application of policies, increased supervision, write-ups, means and methods of communication with her supervisors, and restrictions on her employment relationships . . . are in the nature of ordinary workplace tribulations; they do not rise to materially adverse actions sufficient to support a claim of retaliation").

The Supreme Court has held that schedule changes can sometimes amount to a materially adverse action depending on the context.[66]  Where an employer seeks to "'exploit a known vulnerability' . . . in a way that causes an actionable loss," it may dissuade a reasonable worker from pursing a charge of discrimination.[67]  For example, where the employer is aware that an employee, as a single parent, must get children to work in the morning yet schedules a start time that would be a hardship given that fact, a reasonable jury could conclude that the action was materially adverse.[68]  Here, Plaintiff fails to provide any context for her claim that Defendant engaged in "adverse" or "inequitable" scheduling.  She provides no information about how her schedule compared to other, similarly-situated employees.  Nor does she provide any information that would allow the Court to infer that Defendant "exploited a known vulnerability" that caused Plaintiff to suffer a loss associated with her scheduled hours.  It was stipulated that Plaintiff was given regular days off, and that when there was a pay issue tied to her FMLA leave, it was corrected on the following paycheck.[69]  Under the circumstances of this case, Defendant's adverse and inequitable scheduling decisions would not have dissuaded a reasonable employee from pursuing a charge of discrimination.  Thus, Plaintiff has not met her initial burden under *McDonnell Douglas* of demonstrating a prima face case of retaliation.

---

[66]*Burlington N.*, 548 U.S. at 69.

[67]*Turrentine*, 645 F. Supp. 2d at 990 (quoting *Washington v. Ill. Dep't of Rev.*, 420 F.3d 658, 662–63 (7th Cir. 2005)).

[68]*Id.*

[69]In her administrative charge, Plaintiff alleged the loss of vacation time after her requested dates were denied.  Plaintiff does not mention this grievance in either the Pretrial Order or the response to summary judgment. It is therefore waived.  *See Zenith Petroleum Corp. v. Steerman*, 656 F. App'x 885, 887 (10th Cir. 2016) (quoting *Cortez v. Wal-Mart Stores, Inc.*, 460 F.3d 1268, 1276–77 (10th Cir. 2006)); *Coffey v. Healthtrust, Inc.*, 955 F.2d 1388, 1393 (10th Cir. 1992).

### c. Pretext

Assuming Plaintiff could demonstrate a prima facie case of retaliation, the burden would shift to Defendant to articulate a legitimate nonretaliatory reason for those materially adverse actions. Defendant has articulated nonretaliatory reasons for the adverse employment actions, as described above. Plaintiff therefore must show that these reasons are pretext for retaliation on the basis of her age or race. She offers the same arguments to support pretext on her retaliation claims as she offers on the discrimination claims—that Defendant's explanations for its decisions keep changing, and that her former coworkers disagree with Defendant's treatment of Plaintiff. For the same reasons explained on the discrimination claims, Plaintiff does not meet her burden to show that Defendant's stated reasons for the retaliation are a pretext for retaliation.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion for Summary Judgment (Doc. 56) is **granted**.

**IT IS SO ORDERED.**

Dated: May 14, 2019

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE
